[No. F030661. Fifth Dist. Sept. 24, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY LOWELL VAN WINKLE, Defendant and Appellant.

**COUNSEL**

Matthew H. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross and Patrick J. Whalen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—A jury convicted defendant Jeffrey Lowell Van Winkle of two counts of lewd and lascivious conduct with a child. On appeal, defendant contends that CALJIC Nos. 2.50.1 and 2.50.01 unconstitutionally lower the People's burden of proving the current sexual offense beyond a reasonable doubt by permitting prior sexual offenses (proved by a preponderance of the evidence) to show that he actually committed the current crime. Specifically, defendant contends that (1) prior sexual offenses should not be used to prove predisposition or actions in conformity therewith, (2) prior sexual offenses should be proved beyond a reasonable doubt, and (3) the jury instructions may mislead the jury into believing that a preponderance of the evidence is sufficient to convict him of the current offense. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 1998, the District Attorney of Mariposa County filed an amended information charging defendant with two counts of lewd and lascivious acts upon a child in violation of Penal Code section 288, subdivision (a). At trial, the People presented evidence of defendant's current offense, as well as prior sexual misconduct.

### Current Offense

The current charges pertained to Wendy E., the daughter of Sherry S. Between January and May of 1996, Sherry and Wendy lived with defendant in a small two-bedroom mobilehome, along with Sherry's seven-year-old son and defendant's five-year-old son.

After Sherry and defendant separated, Sherry married Michael S. in or around January 1997. Wendy lived with her mother and Michael. Michael had an older daughter named Heather. One day, Wendy told Heather that she (Wendy) had been molested. Heather informed her father, Michael. Michael confirmed the story with Wendy. Michael then told Sherry, who also talked to Wendy and then immediately notified the police.

On July 24, 1997, a representative from child protective services interviewed Wendy, while a sheriff's deputy and an assistant district attorney observed the interview from behind a one-way mirror. During the interview, Wendy told the child protective services worker that on two occasions defendant had put his hand down her pants. Using a teddy bear, she described how on one occasion defendant had held her in front of him, and once had held her from behind. The interview was videotaped, and that videotape was played for the jury.

At trial, Wendy, who was seven years old when she testified in front of the jury, said that defendant had touched her private area on only one occasion. She recalled that defendant grabbed her, had her sit on his lap, and put his hand down her underwear.

A sheriff's deputy, who was also the chief investigator for sexual assaults, also testified. She explained that it is not unusual for children to forget or deny prior sexual molestations. She also explained that interviewing child molest victims is complicated due to the child's limited vocabulary and feelings of confusion.

*Prior Misconduct*

The People also presented evidence that defendant had molested two other girls. Jessica, defendant's daughter, who was 12 years old at the time of trial, testified that her father molested her when she visited him on the weekends when she was between the ages of three and six years old.[1] Almost every time she visited him, they took baths together naked. He would also put his finger by her vagina and rub her; he would also have her sit on his lap while he rubbed his penis back and forth between her legs. Jessica also testified that defendant placed his finger into her anus, and that he had her orally copulate him several times and, on at least one occasion, he ejaculated. Defendant often engaged in similar conduct in Jessica's bedroom. There was also an incident where she, defendant, and Jessica's cousin Cassandra were all naked inside a closet. Jessica also testified that her father would kiss her and Cassandra and stick his tongue into the girls' mouths.

Jessica's grandmother, Mary W., testified that in the summer of 1992, she terminated Jessica's visits with defendant when Jessica told her of the molestations.

Cassandra, defendant's niece, who was 15 years old at the time of trial, testified defendant would occasionally touch her in ways that made her feel

---

[1]Jessica's mother was living apart from defendant at the time.

uncomfortable, both at defendant's house and at her father's house. She recalled an incident when she, Jessica and defendant were in the closet, and remembered that she and Jessica were naked. She testified that defendant had touched her private parts with his hands and made her orally copulate him. Once defendant tried to have intercourse with her, but she pulled away and locked herself in the bathroom. On another occasion, defendant kissed her and put his tongue in her mouth. Cassandra saw defendant kiss Jessica in the same manner; Cassandra also saw defendant touch Jessica.

Cassandra's mother testified that in 1985, she suspected that Cassandra's father (defendant's brother) had molested Cassandra when she was three or four years old. In 1992, when Cassandra's doctor noticed some genital irregularities, Cassandra said that defendant had touched her private area.

*Defense*

Defendant took the witness stand and denied molesting Wendy. He believed that Sherry, the victim's mother, had made up the allegations because defendant had Sherry removed from his house and arrested for property damage. Defendant also testified that Sherry had called him twice saying that she had brought the charges to "get even" with him.[2]

Defendant also denied any sexual activity with Jessica or Cassandra. He surmised that Jessica's grandmother, Mary W., had pressured Jessica into asserting the fabricated allegations. The grandmother had forced defendant and Jessica's mother out of her house and had also sought custody of Jessica.[3]

*Conviction and Sentencing*

The jury found defendant guilty on both counts of violating Penal Code section 288, subdivision (a). The court sentenced defendant to an aggregate term of eight years: six years on count I (the midterm) and a consecutive two years on count II (one-third the midterm). Defendant timely appealed.

---

[2]The parties stipulated that when Sherry and defendant separated, they became involved in a domestic dispute. The parties further stipulated that as a result of that dispute Sherry pleaded guilty to a misdemeanor charge, was placed on 36 months probation, served 5 days in jail, and was ordered to obtain counseling.

[3]At the time of trial, the grandmother did have custody of Jessica.

## DISCUSSION

### I. *CALJIC Nos. 2.50.1 and 2.50.01*

 Defendant's arguments concern CALJIC Nos. 2.50.1 and 2.50.01.[4] CALJIC No. 2.50.01 permits the jury to consider uncharged sexual offenses as evidence that defendant had a disposition to commit similar sexual offenses and, if such a predisposition is found, then allows the jury to infer that the defendant was likely to and actually did commit the crimes with which he is currently charged. Pursuant to CALJIC No. 2.50.1, the prosecution only has to prove the uncharged offenses by a preponderance of the evidence. These instructions are based on section 1108 of the Evidence Code.[5]

### II. *Waiver*

 At the outset, the People argue that defendant has waived his right to challenge the jury instructions by failing to object at trial. However, the constitutional right to have all elements of a criminal offense proved beyond a reasonable doubt is substantial. Thus, we find that defendant's challenge to the constitutionality of CALJIC Nos. 2.50.1 and 2.50.01 has not been

---

[4]The judge in this case instructed the jury as follows:

"Evidence has been introduced for the purpose of showing that the Defendant engaged in a sexual offense or offenses on one or more occasions other than that charged in this case.

"Sexual offense means a crime under the laws of the state or of the United States that involves any of the following:

"Any conduct made criminal by Penal Code section 288(a);

"Contact without consent between any part of the defendant's body or an object and the genitals or anus of another person;

"Contact without consent between the genitals or anus without consent of any part of a person's body.

"If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is charged or accused.

"Unless you are otherwise instructed, you must not consider this evidence for any other purpose.

"Within the meaning of the preceding instructions the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed a crime or sexual offenses other than those for which he is on trial.

"You must not consider such evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offenses."

[5]Evidence Code section 1108, which became effective on January 1, 1996, provides in relevant part as follows: "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Stats. 1995, ch. 439, § 2.)

waived. (See Pen. Code, § 1259 [challenges to jury instructions affecting substantial rights are not waived even if no objection is made at trial]; see also *People* v. *Cuevas* (1995) 12 Cal.4th 252, 260 [48 Cal.Rptr.2d 135, 906 P.2d 1290] [the due process clause of the Fourteenth Amendment requires the prosecution to convince the jury of all essential elements of guilt beyond a reasonable doubt]; see also *People* v. *Roder* (1983) 33 Cal.3d 491, 497 [189 Cal.Rptr. 501, 658 P.2d 1302] [An evidentiary device, such as a jury instruction addressing inferences or presumptions, is unconstitutional if it undermines the jury's responsibility to convict a defendant based on proof beyond a reasonable doubt of the facts necessary to establish the crime.].)

## III. *The Constitutionality of Using Prior Misconduct to Prove Propensity*

 Defendant challenges the use of prior sexual misconduct to prove that he committed the current sexual offense. While he acknowledges that a long line of cases holds that prior crimes need only be proved by a preponderance standard,[6] defendant points out that before the enactment of Evidence Code section 1108, prior offenses could not be used by the jury to find that a defendant was predisposed to commit similar acts. (See Evid. Code, § 1101 [allowing evidence of prior crimes to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but not allowing such evidence to prove defendant committed the current crime].)

This constitutional attack on Evidence Code section 1108 has already been rejected in *People* v. *Fitch* (1997) 55 Cal.App.4th 172 [63 Cal.Rptr.2d 753], a Court of Appeal, Third District, case. (See *id.* at pp. 175-176 [upholding Evidence Code section 1108 and the use of prior sexual offenses to prove another sexual offense]; see also 55 Cal.App.4th at p. 182 ["The Legislature has determined the need for this evidence is 'critical' given the serious and secretive nature of sexual crimes and the often resulting credibility contest at

---

[6]See, e.g., *People* v. *Lisenba* (1939) 14 Cal.2d 403, 429-430 [94 P.2d 569] (prior crime need not be proved beyond a reasonable doubt in order to be admitted to show intent for current crime); *People* v. *Durham* (1969) 70 Cal.2d 171, 187, footnote 15 [74 Cal.Rptr. 262, 449 P.2d 198] ("Although a person charged with crime cannot be convicted thereof unless he is proved guilty beyond a reasonable doubt, other uncharged offenses introduced to show the existence of some element of the charged crime need only be proved by a preponderance of substantial evidence."); *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 965 [127 Cal.Rptr. 135, 544 P.2d 1335] (collateral facts need not be proven beyond a reasonable doubt); *People* v. *Medina* (1995) 11 Cal.4th 694, 763-764 [47 Cal.Rptr.2d 165, 906 P.2d 2] (preponderance of the evidence standard proper for proving prior crimes during guilt phase); *People* v. *Carpenter* (1997) 15 Cal.4th 312, 380-383 [63 Cal.Rptr.2d 1, 935 P.2d 708] (prior crimes used to prove intent may be established by a preponderance of the evidence).

trial."].) We have chosen to follow *Fitch.* (See *People* v. *Pierce\** (Cal.App.).)[7]

Defendant also claims that evidence of other offenses is inherently prejudicial. However, such evidence is also extremely relevant, especially with regard to sexual offenses. (See *People* v. *Fitch, supra,* 55 Cal.App.4th at p. 179 and cases cited therein.) Moreover, such evidence is still subject to exclusion under Evidence Code section 352. (See Evid. Code, § 1108; see also Com. to CALJIC No. 2.50.01 (6th ed. 1996) pp. 90-91 [Although "[t]he statute does not contain any limitation or requirement that the prior sexual offense be of the same or similar type as the crime charged . . . , it would seem that the predatory disposition established would have to be germane to the crime charged. . . . Presumably, this is a factor the court could consider in applying Evidence Code section 352."].) Thus, the trial court is permitted to admit evidence of prior misconduct provided the probative value outweighs any prejudicial effects.

In our view, evidence of uncharged sexual offenses increasing the evidence of defendant's guilt does not reduce the prosecution's burden of proving guilt beyond a reasonable doubt; prior sexual misconduct is simply an additional circumstance to be considered along with all the other circumstances of the case. (See *In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct.

---

[7]We note, however, that the California Supreme Court has granted review of several decisions addressing the use of prior sexual offenses pursuant to Evidence Code section 1108. (See *People* v. *Ritson\** (Cal.App.) [addressing the constitutionality of section 1108], review granted Aug. 12, 1998, S071200; *People* v. *Falsetta\** (Cal.App.) [same], review granted Aug. 12, 1998, S071521; *People* v. *Baker\** (Cal.App.) [same], review granted Nov. 24, 1998, S073543; *People* v. *Davis* (1999) 71 Cal.App.4th 1492 [84 Cal.Rptr.2d 628] [same], review granted Aug. 25, 1999, S079736.)

The Supreme Court has also granted review of cases involving the use of prior acts of domestic violence pursuant to Evidence Code section 1109. (See, e.g., *People* v. *Hoover\** (Cal.App.) [applying *Fitch* to Evid. Code, § 1109], review granted Sept. 23, 1998, S072374; *People* v. *Acosta\** (Cal.App.) [same], review granted Aug. 18, 1999, S079731; *People* v. *Watts\** (Cal.App.) [finding CALJIC instructions concerning prior acts of domestic violence may allow a jury to convict defendant based on a preponderance of the evidence; but finding no prejudice because the jury instructions as a whole were clear], review granted Dec. 2, 1998, S073741.)

---

\*Reporter's Note: For *People* v. *Pierce*, review granted on October 6, 1999, and on December 15, 1999, review dismissed and cause remanded to Court of Appeal, Fifth Appellate District; for *People* v. *Ritson*, on December 15, 1999, review dismissed and cause remanded to Court of Appeal, Third Appellate District; for *People* v. *Falsetta*, see Supreme Court opinion at 21 Cal.4th 903; for *People* v. *Baker*, on December 15, 1999, review dismissed and cause remanded to Court of Appeal, Third Appellate District; for *People* v. *Hoover* on December 15, 1999, cause transferred to Court of Appeal, Fourth Appellate District, Division Two, with directions (for subsequent opinion see 77 Cal.App.4th 1020); for *People* v. *Acosta*, on December 15, 1999, cause transferred to Court of Appeal, Sixth Appellate District, with directions (opinion filed Apr. 10, 2000, not for publication); for *People* v. *Watts*, on December 15, 1999, cause transferred to Court of Appeal, First Appellate District, Division Five, with directions.

1068, 1072-1073, 25 L.Ed.2d 368] [holding that due process requires proof beyond a reasonable doubt of every ultimate/elemental fact]; see also Imwinkelried, Uncharged Misconduct Evidence (1986) ch. 10, § 10:11, p. 21 ["The courts specifically addressing the question of Winship's application to uncharged misconduct uniformly hold that the admission of uncharged misconduct does not undermine Winship."].)

## IV. *The Constitutionality of CALJIC Nos. 2.50.1 and 2.50.01*

A. *Permissive inferences are constitutional unless no rational factfinder could make such a connection.*

In *Ulster County Court* v. *Allen* (1979) 442 U.S. 140 [99 S.Ct. 2213, 60 L.Ed.2d 777], the United States Supreme Court explained that inferences and presumptions create connections between basic/evidentiary facts and ultimate/elemental facts. (*Id.* at p. 156 [99 S.Ct. at p. 2224].) "Ultimate" or "elemental" facts prove the elements of the crime. (*Ibid.*) By contrast, evidentiary or basic facts do not necessarily prove the elements of the crime. (See *ibid.*)

The instructions at issue here allowed the jury to use the evidence of prior sexual misconduct for the purpose of showing disposition. A prior offense is an evidentiary or basic fact, not an essential element of the present crime. Similarly, disposition is not an essential element of the crime. Thus, this inference involved a logical step from one evidentiary fact (prior sexual misconduct) to another evidentiary fact (disposition).

Once disposition is inferred, the challenged instructions then allowed the jury to infer that the defendant "was likely to commit *and did commit* the crimes of which he is charged or accused." (Italics added.) (See CALJIC No. 2.50.01.) The likelihood that a defendant will commit an offense is not an essential element of the present crime. However, inferring that he actually did commit the offense impliedly proves all of the essential elements of the current offense. Thus, the instructions allowed the jury to make two additional inferences: (1) from an evidentiary fact (disposition) to another evidentiary fact (likelihood of acting in conformity with the disposition); and (2) from an evidentiary fact (disposition) to an elemental fact (that defendant committed the current crime).[8]

Although inferences and presumptions form an integral part of the factfinding process, they infringe the due process clause of the federal Constitution if they undermine the jury's responsibility in a criminal trial to

---

[8]Some courts distinguish between evidentiary facts (e.g., prior acts), intermediary facts (e.g., predisposition) and ultimate facts (e.g., the elements of the current crime). (See, e.g., *People* v. *Thompson* (1980) 27 Cal.3d 303, 315, fns. 13 & 14 [165 Cal.Rptr. 289, 611 P.2d 883].)

find the ultimate facts (i.e., the elements of the crime) beyond a reasonable doubt. (*Ulster County Court* v. *Allen, supra,* 442 U.S. at p. 156 [99 S.Ct. at p. 2224].) In determining whether the jury's constitutional duty has been undermined, the high court has distinguished between (1) mandatory presumptions and (2) permissive inferences or presumptions. (*Ibid.*)

Mandatory evidentiary associations require the jury to find an ultimate/ elemental fact "upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." (*Ulster County Court* v. *Allen, supra,* 442 U.S. at p. 157 [99 S.Ct. at p. 2225].) By definition, mandatory presumptions infringe on the reasonable doubt standard because they limit the jury's ability to independently assess the prosecution's evidence. (*Ibid.*) A mandatory presumption must be evaluated on its face. (*Id.* at pp. 157-160 [99 S.Ct. at pp. 2224-2226]; see, e.g., *Carella* v. *California* (1989) 491 U.S. 263, 265 [109 S.Ct. 2419, 2420, 105 L.Ed.2d 218] [holding unconstitutional two mandatory presumptions: (1) if a rental car is not returned within five days after expiration of the rental agreement, then the person embezzled the vehicle; and (2) if rented property is not returned within twenty days of demand, the renter intended to commit theft by fraud].)

By contrast, permissive evidentiary associations allow the jury to infer an ultimate/elemental fact based on the prosecutor's proof of a basic/evidentiary fact. (*Ulster County Court* v. *Allen, supra,* 442 U.S. at p. 157 [99 S.Ct. at pp. 2224-2225].) More important, they do not require the defendant to come forward with any evidence. (*Ibid.*) *"Because this [type of evidentiary association] leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference."* (*Ibid.,* italics added.) Permissive evidentiary associations must be evaluated "as applied" because only in this limited situation is there any risk that a rational factfinder may make an erroneous factual determination, thereby undermining the jury's responsibility to find the ultimate/elemental facts beyond a reasonable doubt. (See *ibid.*)

Here, the jury instructions contain permissive, not mandatory, inferences. If the jury found by a preponderance of evidence the first evidentiary fact (that defendant did commit the other sexual offenses), then the jury was allowed—but not required—to infer another evidentiary fact (that defendant had a disposition to commit the same or similar type offense). If the jury made this first inference, then the jury was allowed—but not required—to make two additional inferences (that defendant was likely to commit and did commit the current sexual offense).

We believe that a trier of fact could rationally infer (1) that a defendant who has previously sexually molested other young girls under similar circumstances has a disposition toward committing this type of offense, (2) that

being predisposed to committing lewd and lascivious acts with children increases the likelihood of repeat offenses, and (3) that such a disposition increases the likelihood that he did commit the current offense, an offense supported by considerable evidence of its own.[9] Thus, the jury instructions meet the requirements of due process as enunciated in *Ulster County Court*. (See *Ulster County Court* v. *Allen, supra*, 442 U.S. at p. 157 [99 S.Ct. at p. 2225] [Stating that a permissive inference "affects the application of the 'beyond a reasonable doubt' standard *only if*, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." (Italics added.)].)

As we stated in *People* v. *Pierce, supra,** (Cal.App.): "Certainly appellant must be tried for the current offense, not the past offense or his propensity to commit certain offenses. [Citations.] However, admission of the prior crimes evidence does not necessarily lead to the conclusion he was tried on his character."

*People* v. *Bersamina** (Cal.App.), a recent case finding CALJIC Nos. 2.50.1 and 2.50.01 unconstitutional, held that "when the ultimate fact to be reached through a permissive presumption is a fact the prosecution is required to prove beyond a reasonable doubt (such as whether the defendant committed the charged crime), due process requires that the basic fact must also be proven beyond a reasonable doubt." (73 Cal.App.4th at p. 942.) In reaching this conclusion, the court relied on sections 600 and 607 of the Evidence Code.[10]

We disagree with *Bersamina* because, by definition, section 607 of the Evidence Code only applies to mandatory presumptions affecting the

---

[9]See generally, Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases* (1993) 21 Am. J. Crim.L. 127, 128-217; 1 McCormick on Evidence (4th ed. 1992) section 190, pages 803-804; 1A Wigmore on Evidence (Tillers rev. 1983) section 62.2, pages 1334-1335; Federal Rules of Evidence, rule 413 (28 U.S.C.) (permitting uncharged sex offense as character evidence in sex offense cases).

[10]Evidence Code section 607 provides: "When a *presumption affecting the burden of proof* operates in a criminal action to establish presumptively any fact that is essential to the defendant's guilt, the presumption operates only if the facts that give rise to the presumption have been found or otherwise established beyond a reasonable doubt and, in such case, the defendant need only raise a reasonable doubt as to the existence of the presumed fact." (Italics added.)

Evidence Code section 600 provides: "(a) A presumption is an assumption of fact that the law *requires* to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence.

"(b) An inference is a deduction of fact that *may* logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Italics added.)

---

*Reporter's Note: For *People* v. *Pierce*, see Reporters Note, *supra*, at page 141; for *People* v. *Bersamina*, opinion A082268 deleted upon direction of Supreme Court by order dated October 20, 1999.

burden of proof. (See Evid. Code, §§ 600, subd. (a) & 607.) Yet the jury instructions at issue do not contain mandatory presumptions and do not shift the burden of proof. (See *Ulster County Court* v. *Allen, supra,* 442 U.S. at p. 157 [99 S.Ct. at pp. 2224-2225] [permissive presumptions do not shift the burden of proof].)

Moreover, *Bersamina*'s rule, which is substantially similar to CALJIC No. 2.01,[11] in effect renders CALJIC No. 2.01 a mandatory jury instruction in any case involving uncharged prior offenses even when the prosecution's case does not substantially rely on circumstantial evidence. (See Use Note and Com. to CALJIC No. 2.01 (6th ed. 1996) p. 38 [limiting the use of this instruction to cases based *substantially* on circumstantial evidence].) This creates problems in cases based substantially on direct evidence because such an instruction may mislead the jury to believe that in order to find the defendant guilty, the jury must "believe[] that such facts as the victim's bruises, torn clothes, abandoned shoes, purse, undergarments, hysterical postrape condition, etc. were each proved beyond a reasonable doubt." (*People* v. *Shea* (1995) 39 Cal.App.4th 1257, 1271 [46 Cal.Rptr.2d 388].)

B. *Evidentiary facts may be proved by a preponderance of the evidence.*

Defendant argues that CALJIC Nos. 2.50.1 and 2.50.01 lower the People's burden of proving the current sexual offense beyond a reasonable doubt by permitting prior sexual offenses (proved by a preponderance of the evidence) to show that defendant actually committed the current crime. According to defendant, prior sexual offenses used to show that the defendant actually committed the current crime must be proved beyond a reasonable doubt.

In *People* v. *Lisenba, supra,* 14 Cal.2d 403, the defendant was charged with murdering his wife. (*Id.* at p. 406.) At trial, the court admitted evidence that the defendant had also murdered his former wife under circumstances similar to the present crime. (*Id.* at p. 427.) One of the purposes for which the prior crimes evidence was admitted was to prove intent, an essential element of the current crime. (*Id.* at p. 428.) Yet the trial court did not require the prosecutor to prove the prior crime beyond a reasonable doubt. (See *id.* at pp. 429-430.)

On appeal, the California Supreme Court upheld the use of the prior crimes evidence, which the court considered a "collateral circumstance."

---

[11]CALJIC No. 2.01 provides, in part: "[E]ach fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt." (CALJIC No. 2.01 (6th ed. 1996).)

(*People* v. *Lisenba, supra,* 14 Cal.2d at p. 429.) The court also approved of a lower burden of proof for prior crimes, even though the jury was allowed to infer from that evidence the existence of an elemental fact, namely intent. (See *id.* at pp. 429-430.) The court explained: " ' "It is only the *ultimate material facts* to which the rule of reasonable doubt applies. The facts regarding the other transactions were simply *evidentiary facts* introduced for the purpose of being considered, together with all of the other evidence in the case, upon the question of criminal knowledge and intent; and though the jury may have entertained some reasonable doubt as to some of the other transactions, or some of the other items of evidence, which tend to prove guilty knowledge or intent, if, notwithstanding that fact, and having considered the *evidentiary facts,* doubtful and otherwise, they were convinced beyond a reasonable doubt of the *ultimate fact* of guilty knowledge and intent, it is sufficient." ' " (*Id.* at p. 430, italics added.)

■ Similarly, the prior uncharged sexual offenses in this case are evidentiary facts that, along with other evidence presented, establish the defendant's guilt of the crime charged. Whether used to prove intent or other elements of the current offense, prior sexual offenses need not be proved beyond a reasonable doubt because they are collateral circumstances.

In *People* v. *Carpenter, supra,* 15 Cal.4th 312, the "Trailside Killer" was found guilty of murdering seven hikers, some of whom he also raped. (*Id.* at p. 344.) On appeal, he challenged the use of prior crimes evidence, which was used to prove intent and state of mind. (*Id.* at pp. 380, 382-383.) ■ Rejecting the argument that prior crimes must be established by clear and convincing evidence, the California Supreme Court held that prior crimes only need to be established by a preponderance of the evidence. (*Id.* at p. 382.) The court went on to explain the permissive inferences as follows: "[T]he more often defendant killed or raped, the more likely he (1) intended (and premeditated) the result actually achieved, (2) intended to fulfill his statement of intent to rape Hansen, and (3) intended to kill Haertle although Haertle survived. Stated differently, evidence that defendant killed and raped before he shot Hansen and Haertle reduced the likelihood that . . . he did not intend to kill or rape. [Citation] This simple logic required no complex instructions." (*Id.* at p. 383.)

■ Thus, we believe that prior sexual offenses proved by a preponderance of the evidence may be used to infer that the defendant committed the current sexual offense, as long as the current offense is proved beyond a reasonable doubt. While ultimate/elemental facts (the current offense) must be proved beyond a reasonable doubt because they *necessarily* prove the elements of the crime, basic/evidentiary facts (such as prior offenses) may be

proved by a preponderance of the evidence. ▇▇▇ (See, e.g., *People* v. *Medina, supra,* 11 Cal.4th at p. 763 ["[F]acts tending to prove the defendant's other crimes for purposes of establishing his criminal . . . intent are deemed mere 'evidentiary facts' that need not be proved beyond a reasonable doubt as long as the jury is convinced, beyond such doubt, of the truth of the 'ultimate fact' of the defendant's . . . intent."]; *People* v. *Meyes* (1961) 198 Cal.App.2d 484, 497 [18 Cal.Rptr. 322] [describing "evidentiary" or "basic" facts (such as motive) as "not an essential link in the chain" of inferences leading to the ultimate fact of guilt]; *People* v. *Naughton* (1969) 270 Cal.App.2d 1, 8 [75 Cal.Rptr. 451] ["It is . . . established that each fact in a chain of circumstances need not be proved beyond a reasonable doubt."].)

C. *It is not reasonably likely that the jury instructions as a whole confused the jury*

▇▇▇ Defendant argues that CALJIC Nos. 2.50.1 and 2.50.01 unconstitutionally short-circuited the jury's deliberation process by allowing the jury to find him guilty of the current offense based on a prior sexual offense proved by a preponderance of the evidence. According to defendant, the instructions thus misled the jury into convicting him of the current crime based on a preponderance of the evidence, in violation of his due process right to proof beyond a reasonable doubt.

▇▇▇ In order to prevail on a claim that the jury instructions are misleading, the claimant must prove a reasonable likelihood that the jury misunderstood the instructions as a whole. (*People* v. *Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481, 892 P.2d 1224].) " ' "The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole." ' " (*People* v. *Castillo* (1997) 16 Cal.4th 1009, 1016 [68 Cal.Rptr.2d 648, 945 P.2d 1197].)

▇▇▇ Defendant claims that CALJIC Nos. 2.50.1 and 2.50.01 permit the jury to convict him of the current offense by a preponderance of the evidence. However, the instructions do *not* provide that the current crime may be proved by a preponderance of the evidence. Instead, they expressly provide that only the *prior crimes* must be proved by a preponderance of the evidence. (See CALJIC No. 2.50.01.)[12] Moreover, defendant's interpretation of CALJIC Nos. 2.50.01 and 2.50.1 would require every jury instruction addressing evidence or elements of a crime to refer to the reasonable doubt

---

[12]The 1999 revision of CALJIC No. 2.50.01 now includes the following language: "However, if you find [by a preponderance of the evidence] that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove [beyond a reasonable doubt] that [he] [she] committed the charged crime[s]. The weight and significance of the evidence, if any, are for you to decide." (CALJIC No. 2.50.01 (1999 rev.) (6th ed. pocket pt.).) According to the Use Note to the revised version of CALJIC No. 2.50.01, the foregoing language was added

standard. This would render superfluous the instruction requiring the jury to "[c]onsider the instructions as a whole" and not to "single out any particular sentence or individual point or instruction and ignore the others." (CALJIC No. 1.01.) In criminal cases, juries are instructed on the presumption of innocence and the need for proof beyond a reasonable doubt. (See CALJIC No. 2.90.) ▇▇▇ Juries are also presumed to follow the instructions given. (*People* v. *Osband* (1996) 13 Cal.4th 622, 714 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *People* v. *Pinholster* (1992) 1 Cal.4th 865, 919 [4 Cal.Rptr.2d 765, 824 P.2d 571].)

▇▇ In *People* v. *Carpenter, supra,* 15 Cal.4th 312, the California Supreme Court rejected an argument similar to that advanced by defendant in this case. In *Carpenter*, the defendant argued that the jury instruction permitting the jury to consider prior crimes proved by a preponderance of the evidence reduced the prosecution's burden of proof on the mens rea element of the offenses. (*Id.* at pp. 380, 383.) Noting that the standard instructions on reasonable doubt and on the sufficiency of circumstantial evidence for proving specific intent were also given at trial, the court concluded that the instructions as a whole were clear that the prosecution still had to prove intent beyond a reasonable doubt. (*Id.* at p. 383.)

Defendant also argues that because there was no jury instruction requiring the prosecution to prove *every element of the crime* beyond a reasonable doubt, the inferences in the challenged jury instructions allow the jury to *aggregate* the People's proof on all elements in order to find proof beyond a reasonable doubt in the People's *overall* case. Here, however, the court instructed the jury on reasonable doubt pursuant to CALJIC No. 2.90 and enumerated the elements of the charged offense that the People had to prove. (See, e.g., CALJIC No. 10.41.) Thus, based on the jury instructions considered as a whole, the prosecution still had the burden of proving every element beyond a reasonable doubt and the jury could not convict defendant *solely* on proof of the other crimes. (See *People* v. *Pierce, supra,* 72 Cal.App.4th at p. 1456.)

In *People* v. *Bersamina, supra,** (Cal.App.), and *People* v. *Guzman** (Cal.App.), the First District held the standard jury instructions for prior

"to remove any confusion that might arise" in conjunction with CALJIC No. 2.50.1. (Use Note to CALJIC No. 2.50.01 (1999 rev.) (6th ed. pocket pt.) p. 15.)

By emphasizing that the prosecution still has the burden of proving the current crime beyond a reasonable doubt, the modified jury instruction elucidates the different burdens of proof for the prior, as opposed to the current, crime. However, this modification does not change our analysis.

*Reporter's Note: For *People* v. *Bersamina,* see Reporter's Note, *supra,* at page 144; for *People* v. *Guzman,* opinion A079259 deleted upon direction of Supreme Court by order dated October 20, 1999.

sexual offenses unconstitutionally lower the prosecution's burden of proof by allowing a conviction based on a preponderance of the evidence. In particular, the First District found the language of those instructions conflicted with CALJIC No. 2.01, given in both cases, which in relevant part provides that each fact or circumstance necessary to a finding of guilt upon which an inference necessarily rests must be proven beyond a reasonable doubt. CALJIC No. 2.01 could not have caused confusion in this case because it was not given; nor do the parties here argue that it should have been given.

Because we find that no instructional error occurred, we need not address whether a jury instruction that infringes on a defendant's constitutional rights requires per se reversal[13] or a harmless error analysis.[14]

DISPOSITION

The judgment is affirmed.

Harris, J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 15, 1999.

---

[13]See *Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 281-282 [113 S.Ct. 2078, 2082-2083, 124 L.Ed.2d 182] (a "misdescription of the burden of proof" constitutes structural error); see also *People* v. *Cornett* (1948) 33 Cal.2d 33, 41 [198 P.2d 877] (inconsistent instructions constitute reversible error if it is impossible to determine which instruction the jury followed).

[14]See *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 306-307 [111 S.Ct. 1246, 1262-1263, 113 L.Ed.2d 302], and cases cited therein (trial errors include jury instructions involving erroneous rebuttable or conclusive presumptions, a jury instruction that erroneously defines an element of the offense, failing to instruct the jury on the presumption of innocence, and using unconstitutionally overbroad jury instructions during the sentencing phase of a capital trial).