113 Cal.Rptr.2d 571 (2001)
93 Cal.App.4th 973
The PEOPLE, Plaintiff and Respondent,
v.
Rodney Damon RELIFORD, Defendant and Appellant.
No. B141201.
Court of Appeal, Second District, Division Four.
November 14, 2001.
As Modified December 11, 2001.
Review Granted February 13, 2002.
*572 Jonathan P. Milberg, Pasadena, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Marc E. Turchin, Acting Senior Assistant Attorney General, Lance E. Winters and Valerie A. Baker, Deputy Attorneys General, for Plaintiff and Respondent.
HASTINGS, J.
Appellant Rodney Damon Reliford appeals from judgment sentencing him to prison for a term of 37 years, imposed after a jury found him guilty of one count of rape and two counts of sexual penetration with a foreign object. He contends the judgment must be reversed due to instructional error. For reasons explained in this opinion, we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY
This is appellant's second appeal in this case. In the first trial the evidence proved that appellant saw the victim at a nightclub. The victim was a person with whom he had had a consensual sexual relationship several years earlier. When the victim attempted to leave with a girlfriend, appellant playfully pushed her into his car. He then drove around with her, running out of gas twice. Ultimately, he refused to release her from the car and forced her to have sex with him. The jury found appellant guilty of rape, but was unable to reach a verdict on two counts of sexual penetration with a foreign object. We reversed the judgment on grounds of instructional error, reasoning that the jury may have believed it could find appellant guilty under the preponderance of the evidence standard after being instructed pursuant *573 to CALJIC instructions numbered 2.50.01, as then worded, 2.50.1 and 2.50.2.[1]
On remand, a second jury heard essentially the same evidence and was instructed in essentially the same manner, except that the 1999 version of CALJIC No. 2.50.01 was given. That instruction stated, in relevant part: "If you find that the defendant committed a prior sexual offense in 1991 involving Sharon B[.], you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense in 1991 involving Sharon B[.], that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime. The weight and significance of the evidence, if any, are for you to decide. [¶] You must not consider this evidence for any other purpose." (Italics added.)

DISCUSSION
Appellant contends that the 1999 revision of CALJIC No. 2.05.01 does not cure the constitutional defect which caused us to reverse the judgment on his first appeal. He reasons that the revised instruction retains language permitting the jurors to infer that he had a disposition to commit sexual offenses and was likely to and did commit the charged offenses if the jurors found by a preponderance of the evidence that he committed a prior sexual offense.
Appellant is correct that the above italicized portion of the 1999 revision does allow the jurors to infer that appellant did commit the charged offense if they find that he committed the prior offenses. That is an appropriate inference to be drawn from propensity evidence allowed by Evidence Code sections 1101 and 1108.[2] Thus, it is not wrong to so instruct the jury.
The problem presented, as we noted in our prior opinion, is that application of the inference arises from a finding of truth of *574 the prior sexual acts based on the standard of preponderance of the evidence. Guilt of the charged offense requires proof beyond a reasonable doubt. The 1999 version of CALJIC No. 2.50.01 sought to address this problem with a change which was modified by the trial court to read as follows: "However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense involving Sharon [B.], that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime. The weight and significance of the evidence, if any, are for you to decide."
Appellant acknowledges the inclusion of this language in the instruction during the second trial and notes that the California Supreme Court remarked with apparent approval on the revised language of the instruction in People v. Falsetto, (1999) 21 Cal.4th 903, 922-923, 89 Cal.Rptr.2d 847, 986 P.2d 182. He argues that the changed language did not cure the problem and urges that the relevant language in Falsetta was dictum, leaving this court free to address the issue anew.
The language in Falsetta is a dictum. The Supreme Court stated: "Without passing on each specific paragraph, or considering issues not before us, we think revised CALJIC No. 2.50.01 adequately sets forth the controlling principles under section 1108." (People v. Falsetto, supra, 21 Cal.4th at p. 924, 89 Cal.Rptr.2d 847, 986 P.2d 182, italics added.) While the language of the instruction does set forth the controlling principles relating to use of propensity evidence, it does not endorse that portion of the modification which attempts to address the differing standards of proof.
The new language of the instruction obscurely instructs the jury that a finding of truth of prior sexual offenses is not sufficient standing alone to establish defendant's guilt beyond a reasonable doubt. The instruction becomes more ambiguous with the following sentence: "The weight and significance of the evidence, if any, are for you to decide." (Italics added.) We read the italicized portion of this sentence as referring to evidence of the prior sexual offenses. That being so, this sentence seems to suggest that the jury has the option of placing greater weight and significance on evidence of the prior sexual offenses to satisfy the higher standard needed to convict the defendant of the charged offense. At best, the modified instruction informs the jury of a truism: the fact that defendant committed the previous crime is not enough, by itself, to prove that he committed the charged offense. Taken literally, this can be understood to mean only that there must be a corpus delicti of this present crime.
The language of the instruction fails to clearly tell the jury that if they find appellant committed the prior sexual offense with Sharon B., the inference to be drawn from that finding is only one item to consider in connection with all other evidence of the charged offense to establish appellant's guilt beyond a reasonable doubt. Justice Parrilli in People v. James (2000) 81 Cal.App.4th 1343, 96 Cal.Rptr.2d 823 (hereafter James) discusses the problem presented in a similar instruction relating to evidence of prior domestic violence: "It is certain the jury would have been confused by the different standards of proof prescribed by these instructions. It is reasonably likely the jury would apply the preponderance standard given in the instruction tailored to the prior domestic violence evidence. In any event, the jury should not be placed in the position of resolving complicated standard of proof issues *575 that perplex even judges. To assume the jury will accomplish this feat stretches to the breaking point the presumption that juries generally understand and faithfully follow the court's instructions. [Citations.]" (Id. at p. 1358, 96 Cal.Rptr.2d 823, fn. omitted.)
We agree, and we conclude that the instruction here was insufficient to clearly delineate for the jury the use of the lesser standard of proof to establish the prior sexual offense and use of the inference to be drawn therefrom in connection with finding appellant guilty of the present crime beyond a reasonable doubt. Accordingly, we must determine whether this error requires reversal, per se, or whether the effect of the error may be tested under the harmless-beyond-a-reasonable-doubt standard set forth in Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.
In our previous opinion in this matter we concluded the giving of the original version of CALJIC No. 2.50.01 was structural error. Thus, the question is whether the error was harmless beyond a reasonable doubt. We conclude that it was.
First, the prior sexual offense involving Sharon B. was charged as a sentencing enhancement in connection with the charged crimes. The jury was requested to make a finding on this allegation and it found that it was true. In connection with this allegation, the court instructed the jury with CALJIC No. 17.25, the pertinent portion of which is as follows: "If you find the defendant guilty of one or more of the crimes charged in the information, you must determine whether the allegation of the prior conviction for violation of Penal Code Section 220 on 5/22/92 is true. [11] The People have the burden of proving the truth of the allegation. If you have a reasonable doubt that it is true, you must find it to be not true." (Italics added.) In other words, the jury found beyond a reasonable doubt that appellant was guilty of the prior sexual offense against Sharon B.
Next, while the propensity evidence was significant, it is clear from the way that the case was presented to the jury that the focus was on whether there was sufficient evidence to convict appellant beyond a reasonable doubt based on the facts relating to the current incident. The primary issue for the jury to decide was whether the sexual encounter was consensual or not.
The prosecutor utilized the prior offense in aid of his theory of the case; that appellant used the trust of the victim to set up the crimes. He began his summation as follows:
"MR. CARTER: Good afternoon, ladies and gentlemen.
"THE JURY: Good afternoon.
"MR. CARTER: You're here. At this point, you've heard all the evidence in the case, and this is what we call closing argument. And basically the closing arguments give us a chance to tell you what we think the evidence has proven.
"In this case, I think one of the first things the evidence has proven is that [appellant] has a problem. And his problem is that he's a rapist. Anybody who tells you differently is sadly mistaken.
"Let's go back for a moment to August 11th, 1991.
"Before I do that, let'swhen we say that [appellant] is a rapist, he's not like a rapist who jumps out of the bushes. He's not the person who drags someone into an ally or something like that. He does it a different way. He uses trust, *576 he uses manners, he's very polite, and then he violates the trust.
"Now, let's go back to August of 1991. Sharon [B.] trusted the judgment of a friend or hers. The friend introduced himintroduced her to [appellant] and [appellant] said, `hey, I'll take you down to Denny's.' They had all agreed that they were going to go to Denny's. And at that time, Sharon [B.] got into the red BMW with a man she didn't know because she trusted. She trusted her friend's judgment. And then she probably made her own independent judgment, and she trusted [appellant].
"...
"But from the moment that Sharon [B.] got into that car, [appellant] knew that he was going to rape her. He knew that he was not going to take her to Denny's. You look at the evidence and you say, well, how is it that it's clear that he knew?"
At this point the prosecutor reviewed the evidence given by Sharon B. regarding the prior sexual offense and then turned to the facts of the instant crime with the following transition: "Now, let's fast forward to March 8th, 1996. Again, there's a friendship between Michelle [S.] and [appellant]." Playing on the theme of trust, the prosecutor then thoroughly discussed the facts of this case, demonstrating how appellant lead Michelle S. to ride along with him in the car, twice running out of gas, and he concluded as follows:
"So when they end up on the side of the freeway with having run out of gas, she's still annoyed by him, because this is the second time they've ended up on the freeway.
"And then he does the unthinkable, something that she never thought that he was going to do. He attacks her right there and rapes her.
"After that, she sits there sort of in shock, and questions came in from defense attorney, Veil, why didn't you go talk to that tow truck driver?' Another stranger. And you think about it, well, you say does that make sense. I just got raped by a friend of mine, do I go get into a tow truck with a stranger? Do I go to him and see what he's going to do to me or did I say, okay, you got what you wanted, just take me home.
"And that's exactly what happened. And she trusted him. She trusted that he was going to take her home. And again, [appellant] violated that trust, and he took her around a corner, around the corner from her house, and this time it wasn't so easy because he wanted more, and he had a fight on his hands, and he was willing to fight with [Michelle S.]. He was willing to hit, willing to grab her hair, and that's what happened. He raped her again. And you heard the testimony that not only did he rape her, he also penetrated her with his fingers, both vaginally and anally, and then he dropped her off.
"And those are the facts as to what happened."
The prosecutor then turned to a discussion of the jury instructions and discussed the various elements of rape, arguing that the evidence supported each and every element. He then turned to the propensity instruction, explaining its use to the jury:
"Now, how do we put this all together? There's one other instruction that is very interesting. You might be asking why would you put on the evidence of Sharon [B.] when that case isn't even charged here?

*577 "Well, there's an instruction, and this instructionI'm going to tell you the number of it, because when you get the instructions back in the jury room, you may want to read through it, it's 2.50.01. Basically, what it says is that we put on other evidence of a prior sexual offense, and then the paragraph that is important says:
"`If you find that the defendant committed a prior sexual offense in 1991 involving Sharon [B.], you may, but are not required to, infer that the defendant had the disposition to commit the same or similar type sexual offenses.'
"Now, anyone who knows about the law, you may say, well, that's kind of strange. I've never seen that before, because if this case had to do with a burglary, you'd never be able to bring in and say, well, he committed three other burglaries. He must be guilty of this one. That's why it's just a little bit different. What they allow you to do is to take into consideration that the defendant had the disposition to commit the same or similar type sexual offense. And then it goes on to say that you cannot use thislet me read it so I get it right.
"`However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense in 1991 involving Sharon [B.], that is not sufficient by itself to prove beyond a reasonable doubt that he committed the crime charged.'
"So, if that was all you had, you wouldn't have reasonable doubt, beyond a reasonable doubt. But what this does is, it allows you to take it into consideration with all the other evidence as to what the disposition of [appellant] was and if he committed this crime, because that's what this case is all about.
"This isn't a who done it. We know who the person is. This isn't a was there sexual contact. We know that there was. It's a question of whether or not it is rape." (Italics added.)
The prosecutor closed his argument by again discussing the facts of the present case and arguing inferences from those facts why the jury should not believe appellant's defense; that the sexual contact with Michelle S. was consensual.
Defense counsel argued the concept of reasonable doubt, that the sexual encounter was consensual, and urged the jury that evidence presented by the prosecutor regarding the charged offense, at best, left reasonable doubt regarding appellant's guilt. He only mentioned the prior sexual offense in passing before turning to a discussion of the evidence of the charged crime:
"You're really not faced with whether or notyou're not faced here today whether [appellant] had [a sexual contact with Sharon B.]. That's hiding the ball. It's a smoke screen. You're being hoodwinked. You are being bamboozled.
"Prosecution can't know you're smart enough to see that. What happened eight, nine years ago is not what we're concerned with here.
"He's done his time for that. He's been to prison. And for that, we're branding him for life."
In closing, defense counsel argued:
"[Appellant] is not guilty of any crime. Certainly not beyond a reasonable doubt.
"Now, the court's going to instruct you, and has instructed you, the prosecutor *578 has the burden of proof. This burden of proof never shifts to [appellant]. It never shifts to the defense. We presented evidence, we're not required to do that.
"Who amongst you can't say that you have a reasonable doubt whether or not [appellant] committed forcible rape by means of force, violence, duress, menace and fear of immediate and unlawful bodily injury? Or that anal and genital penetration was committed by the same.
"Of course you have doubts. Stop branding him here for something that happened in 1991.
"If nothing else, the evidence here is filled with reasonable doubt, reasonable."
In closing, the prosecutor immediately turned to a discussion of the credibility of Michelle S.:
"Branded a rapist. That's the argument that defense counsel is saying. And when I first heard that, I thought that was really interesting, that he is branded a rapist.
"But if you think for a moment what defense is asking you to believe is that the victim in this case, Michelle [S.], voluntarily made herself without cause, into a rape victim.
"Now, you think about that for a moment, because society looks down or doesn't look favorable on rape victims. If you think about a person having to go through all that a rape victim goes through, who would do it voluntarily? Who would go into the hospital and be examined, have a rape exam, vaginal slides, vaginal swabs, have to tell a complete stranger, first a police officer things about being raped?
"The intimate details about fingers being put inside you and where they were put. And then turn around and have to tell the next detective, tell the detective, I was raped, and then tell the detective all of the details about it.
"And then go on and have to tell the District Attorney in another interview, I was raped. This is what happened to me. I didn't have control over the situation, and these are the things that this person did to me, knowing that they were going to have to come to court and testify at a preliminary hearing. And not just testify at a preliminary hearing, since they're on the stand and have somebody stand behind the podium and cross-examine them and ask questions and infer that you're lying.
"Who would do that voluntarily knowing that down the line you're going to have to sit in a courtroom in front of 14 people you don't know and tell them I got raped, and tell them all of the intimate details....
"Who would do that without cause?"
The prosecutor then commented on the prior sexual offense evidence in the context of this incident as follows:
"And it's interesting that defense is able to differentiate between Sharon [B.] as a victim and Michelle [S.] as a victim.
"Same defendant, but what happened to Sharon [B.] is reasonable, is reasonable. What happened to Michelle [S.] is unreasonable. Why is that? Why is it the Sharon [B.] story is believable? She was lured into an apartment after being told that they were going to breakfast, and she was attacked. You didn't see any evidence, no photographs of Sharon [B.] or anything like that of her injuries, her story was believable. Why? Because she ran.

*579 "Defense wants you to believe that a rape victim has to act a certain way, and if a rape victim doesn't act that certain way, then they're not a rape victim."
The prosecutor then again reviewed the evidence regarding the incident with Michelle S. and closed with the following:
"And when you look at the totality of the defense argument, you have to ask yourself, say just a moment, if the victim in this case were going to lie about this, don't you think she would have came up with a better lie. Don't you think she would have said, hey, we did it one time, he raped me one time? Why throw in the part about being raped with the tow truckbefore the tow truck driver? Why would you do that? Why would she come up with a story like this? The reason she came in and told you the events the way that they happened is because it's the truth. It's the truth. What Sharon [B.] told you was the truth and what Michelle [S.] told you was the truth. The [appellant] in this case is a rapist.
"He's got a problem. And now when the case is concluded, you're leaving the case in the hands of the jury. You have to make the decision as to whether or not you believe the [appellant] or Michelle [S.]. A woman who came in here and testified, who told you what happened. You have to make the decision as to whether you believe Sharon [B.] as to what happened to her.
"It's the People's belief that when you go back there and you evaluate this testimony, and you evaluate this trial, there's no way you will come to any other conclusion except the fact that [appellant] is guilty of raping and sexually assaulting Michelle [S.], and that he was previously convicted back in May of 1991."
Given the entirety of the evidence, all of the instructions given by the court, the argument of counsel, and the true finding by the jury regarding the prior offense, we are convinced beyond a reasonable doubt that the erroneous instruction was harmless.

DISPOSITION
The judgment is affirmed.
We concur: EPSTEIN, Acting P.J., and CURRY, J.
NOTES
[1] Our previous opinion stated: "The jury was instructed pursuant to CALJIC Nos. 2.50.01, 2.50.1, and 2.50.2 as follows: `[CALJIC No. 2.50.01:] ... If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.... [¶] [CALJIC No. 2.50.1:] Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed a sexual offense other than that for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that the defendant committed the other sexual offense. [¶] [CALJIC No. 2.50.2:] "Preponderance of the evidence" means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.'"
[2] Evidence Code section 1101, subdivision (a) provides: "(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specified instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Italics added.)