116 Cal.Rptr.2d 512 (2002)
95 Cal.App.4th 1055
The PEOPLE, Plaintiff and Respondent,
v.
Timothy HASELMAN, Defendant and Appellant.
No. F035862.
Court of Appeal, Fifth District.
February 1, 2002.
Review Granted May 1, 2002.
*513 Rachel Lederman, San Francisco, under appointment by the Court of Appeal, for Plaintiff and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Alan Ashby, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
CORNELL, J.
Appellant Timothy Haselman (Haselman) was charged with a total of five counts of sexual battery on two patients he had seen in his medical practice in Bakersfield. The jury returned a verdict of guilty as to one misdemeanor count of sexual assault on one of the two victims and not guilty as to all other counts. Haselman appeals his conviction alleging evidence of an uncharged and unprosecuted instance of sexual misconduct was improperly admitted. He further alleges his jury was erroneously instructed regarding the uncharged misconduct. We find Haselman's allegations to be without merit and will affirm.

PROCEDURAL SUMMARY
On January 31, 2000, a five-count information was filed in Kern County alleging Haselman had engaged in unlawful sexual conduct with two former patients. Count 1 charged a felony violation of Business and Professions Code section 729, subdivision (b)(3), unlawful sexual intercourse, with two or more unspecified patients. Count 2 charged felony sexual battery in violation of Penal Code section 243.4, subdivision (c) on a former patient, Susan V. Count 3 charged felony sexual battery in violation of Penal Code section 243.4, subdivision (a) on another former patient, Brandi C. Counts 4 and 5 charged Haselman had committed misdemeanor sexual battery in violation of Penal Code section 243.4, subdivision (d) on Susan V. and Brandi C, respectively.
A jury trial was conducted in March 2000. The People moved, in limine, pursuant to Evidence Code[1] section 1108, to present evidence of uncharged sexual misconduct by Haselman. Haselman objected to the admission of the evidence. A hearing was conducted on March 23 and 24, 2000, and the trial court granted the People's *514 motion to admit the evidence. The first trial ended in a mistrial on March 31, 2000.
A second jury trial was conducted on May 15-17 and May 22-24, 2000. Rulings on motions in limine were incorporated from the previous trial. On May 24, 2000, the jury returned a verdict of guilty on count 4, which alleged misdemeanor sexual battery on Susan V. The jury returned verdicts of not guilty on the remaining four counts. Haselman was sentenced to a term of 120 days and was ordered to register under Penal Code section 290. This appeal followed.

FACTUAL SUMMARY
At the time of the occurrence of the events giving rise to these proceedings, Haselman was a licensed physician who had been practicing in California since 1995. In January 1997 Haselman started a weight control clinic in the Los Angeles area. In 1998 he moved to Bakersfield and, after about 11 months of practice in various medical facilities, he began a general practice at St. Michael's Clinic, a subdivision of Good Samaritan Hospital of Bakersfield.
Of relevance to the issues raised in this case, the jury heard testimony from three witnesses who alleged that Haselman had committed sexual battery on them. Two of the witnesses were former patients from the St. Michael's Clinic who alleged facts that lead to the current charges of sexual battery against Haselman. The third witness was a former medical assistant trainee who had interviewed at Haselman's weight control clinic in the Los Angeles area. Relevant portions of their testimony are summarized below.

A. Susan V.
Susan V. (Susan) visited Haselman at the St. Michael's clinic in October 1998. She had previously visited Haselman two or three times without incident. The stated purposes of her October visit was concern about possible exposure to Hepatitis C and lower back pain. Susan entered the office, was greeted by an office worker named Cynthia and escorted to an examination room toward the back of the office suite. When Haselman entered the examination room, Cynthia left. Haselman then closed the blinds covering the window to the outside.
While examining Susan's back, Haselman first directed Susan to lie on the exam table and then to stand facing the table. He directed her to bend forward so that her hands were on the examination table. Haselman then unzipped Susan's skirt and proceeded to massage her lower back. He then moved his hands up toward her upper back and neck while pressing his pelvis against her buttocks. Susan testified she felt a "circular, grinding motion" as Haselman moved his pelvis against her. She reported she could feel his erect penis against her buttocks. When she attempted to stand up, Haselman pushed her back down toward the examination table. Susan estimated this behavior lasted about 10 minutes.

B. Brandi C.
Brandi C. (Brandi) sought treatment from Haselman twice in February 1998 at the St. Michael's clinic for follow up on a problem which had required her recent hospitalization. Brandi had visited Haselman between two and four times in the past without incident. On the first February visit, Brandi went to Dr. Haselman for a pelvic exam. The pelvic exam was performed *515 without incident in the presence of a female chaperone. At the conclusion of the exam, Haselman directed Brandi to get dressed. Haselman and the female chaperone left the room while Brandi got dressed. After Brandi had dressed, Haselman returned to the examination room alone and told Brandi he needed to perform a rectal examination. He directed Brandi to take down her pants and underwear and to turn and face the examination table. He then placed his hand on her back and pressed down toward the table until her head was near the table surface. Brandi testified she felt Haselman insert what felt like two gloved fingers into her rectum. Brandi complained of discomfort or pain and tried to stand up but was prevented from doing so. Brandi estimated the procedure lasted less than a minute. Haselman then left the room and Brandi got dressed. At the time, Brandi testified she did not feel as though anything improper had taken place, only that the examination was very uncomfortable.
After the rectal exam, Brandi went to Haselman's office and was told to come back for a follow-up visit on February 12, 2000. Haselman remarked in passing that he would like Brandi to dance for him privately sometime. Brandi ignored this remark.
On February 12 Brandi returned to the office accompanied by her mother. Brandi intended to have her mother accompany her into the exam room because she "felt a little uncomfortable." When they arrived, Haselman told Brandi and her mother that Brandi need not be accompanied into the examination room because there would be a nurse chaperone in the room. Haselman examined Brandi in an examination room, in the presence of a nurse, without incident.
After the examination, Haselman instructed Brandi to come into his office. She followed him into the office where they talked for a short time alone. Brandi recalled that Haselman had locked the door as he closed it after they entered the office. Haselman informed Brandi that she had a vaginal yeast infection and she needed a cream to treat it. Haselman retrieved a jar of cream from off the shelf in his office and told Brandi he was going to show her how to apply the cream. He instructed Brandi to take down her pants and underwear and bend over the back of a chair so that her feet were on the floor at the back. Haselman then put his hands on Brandi's waist and bent her over the chair so that her hands were on the chair seat. At that point, Haselman got on his knees behind Brandi. Brandi testified Haselman then put what felt like two gloved fingers of one hand inside her vagina and moved the fingers in and out. With the other hand, apparently ungloved, he rubbed her clitoris. Brandi testified she was frightened and couldn't move. She did not know how long this lasted, but it seemed like a long time.

C. Maria W.
In April 1998 Maria W. (Maria) was training as a medical assistant at the American School of Medical Technology in the Los Angeles area. As a part of her program, she was required to spend 160 hours as an extern in a physician's office. The school assigned Maria to Haselman's weight loss clinic in Redondo Beach for her externship. Maria appeared for an interview with Haselman on or about April 28, 1998. Maria noticed there was one female patient present when she arrived for the interview but there appeared to be no office or medical personnel present. *516 After the female patient left, Haselman called Maria back to the treatment area to begin her interview.
As a part of the interview process, Maria and Haselman went to the area where patients were preliminarily seen and Haselman demonstrated the body fat measurement technique he employed. At this point in Maria's testimony, the jury received instructions adapted from CALJIC Nos. 2.50 and 2.50.01.[2] Following those instructions, Maria went on to testify that she and Haselman went into an examination room where Haselman told Maria he would demonstrate a physical examination on her. Haselman directed Maria to stand facing the examination table. She testified Haselman then apparently listened to her heart with a stethoscope. He then placed his hand on her back and pushed her toward the table while pulling down her pants. Haselman forcibly held Maria so that her arms were braced on the exam table while he rubbed his penis between her legs and against her buttocks. Maria testified she could not remember how long the rubbing lasted but it stopped when she heard someone come in the front door of the office. Maria was then able to stand upright, turn around and pull her scrub pants up. When she did so, she observed Haselman was still wearing pants but she noticed his penis was erect and there was a wet spot on his pants.
Maria reported this incident to the police, a Medical Board and to a deputy district attorney in the Los Angeles area. Eventually, after two court appearances, she became unwilling to pursue the matter further and the prosecution was discontinued.

D. Jury Instructions
At the end of closing remarks, the jury was instructed pursuant to CALJIC No. 2.50.01 (1999 rev.) as follows:
"Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that charged in the case.
"`Sexual offense' means a crime under the laws of a state or the United States. It involves any of the following:
"Contact without consent between any part of the defendant's body or an object in the genitals or anus of another person, or;
"Contact without consent between the genitals or anus of the defendant and any part of another person's body.
"If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses.
"If you find that the defendant had this disposition, you may, but are not *517 required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.
"However, if you find by preponderance of the evidence that the defendant committed a prior sexualcommitted prior sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.
"The weight and significance of the evidence, if any, are for you to decide. Unless you are otherwise instructed, you must not consider this evidence for any other purpose."
The jury also received instruction pursuant to CALJIC No. 2.50.1 as follows:
"Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that the defendant committed the crimes or sexual offenses other than those for which he's on trial.
"You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual crimes or sexual offenses."
The trial court also added a paragraph to the instruction under CALJIC No. 2.50.1 as follows:
"However, you may not convict the defendant of any of the charged crimes unless all the evidence presented convinces you beyond a reasonable doubt that the defendant is guilty of any of those charged crimes."

DISCUSSION
Haselman raises two issues on appeal. First, he alleges the trial court erred prejudicially when it admitted evidence of uncharged and unprosecuted sexual misconduct. Specifically, Haselman contends the presentation of such evidence pursuant to section 1108 impermissibly infringed on his due process rights.
Second, Haselman alleges that the jury instructions given pursuant to CALJIC Nos. 2.50.01 and 2.50.1 impermissibly reduced the People's burden of proof by allowing the jury to consider evidence of uncharged sexual misconduct if they found the misconduct was true by a preponderance of the evidence. He contends that if evidence of uncharged sexual misconduct was admitted, the jury should have been instructed that, in order to consider such evidence, the misconduct must be found true beyond a reasonable doubt.

I. Admissibility of Evidence of Prior Uncharged Misconduct[**]

II. Jury Instructions
Haselman contends the instructions his jury received pursuant to CALJIC Nos. 2.50.01 and 2.50.1 erroneously stated the burden of proof required for conviction because the instructions permitted the jury to convict upon finding by a preponderance of the evidence that he had committed the uncharged acts. Haselman's contention is based on the assertion that in order for the jury permissibly to infer from his uncharged sexual misconduct some proof that he had committed the charged offense, the jury must find the misconduct true beyond a reasonable doubt. This assertion misstates the law.
"[P]rior sexual offenses proved by a preponderance of the evidence may be used to infer that the defendant committed the current sexual offense, as long as the current offense is proved beyond a *518 reasonable doubt. While ultimate/elemental facts (the current offense) must be proved beyond a reasonable doubt because they necessarily prove the elements of the crime, basic/evidentiary facts (such as prior offenses) may be proved by a preponderance of the evidence. [Citations.]" (People v. Van Winkle (1999) 75 Cal.App.4th at 133, 146-147, 89 Cal.Rptr.2d 28.)
Haselman correctly notes appellate courts were split as to whether the pre 1999 version of CALJIC No. 2.50.01 was erroneous. However, the potential error that concerned those courts was not whether consideration of the evidence of uncharged sexual misconduct required proof of the misconduct by a preponderance of the evidence. Rather, the concern was whether the instruction mislead juries to believe they could substitute the inference drawn by finding the uncharged misconduct was true by a preponderance of the evidence for proof beyond a reasonable doubt of the elements of the charged crime. (See, e.g., People v. Frazier (2001) 89 Cal.App.4th 30, 35-36, 107 Cal.Rptr.2d 100 [pre-1999 version unambiguously and erroneously permitted jury to find defendant committed charged crime if they found by preponderance of evidence defendant committed prior act].) Thus, Haselman's contention that the jury was required to find the uncharged misconduct was true beyond a reasonable doubt in order to convict is without authority and is rejected.
What remains is to determine whether the instruction in CALJIC No. 2.50.01 that was given to Haselman's jury was erroneous because it mislead the jury as to the standard of proof applicable to a determination of his guilt as to the charged offense. In dictum, the Falsetta court voiced its approval of the added language in the 1999 revision to CALJIC No. 2.50.01.[4] Notwithstanding this approval by the high court, the split of authority concerning the propriety of the instruction that was present prior to the 1999 revision persists. (See, People v. Vichroy (1999) 76 Cal.App.4th 92, 101, 90 Cal.Rptr.2d 105 [finding due process violation in pre-1999 version of CALJIC No. 2.50.01]; contra People v. O'Neal (2000) 78 Cal.App.4th 1065, 1067, 93 Cal.Rptr.2d 248 [rejecting Vichroy].)
Division Four of the Second District Court of Appeal found that the 1999 modification to CALJIC No. 2.50.01 was "insufficient to clearly delineate for the jury the use of the lesser standard of proof to establish the prior sexual offense and use of the inference to be drawn therefrom in connection with finding appellant guilty of the present crime beyond a reasonable doubt." (People v. Reliford (2001) 93 Cal. App.4th 973, 978, 113 Cal.Rptr.2d 571.) In contrast, the Division One of the First District Court of Appeal considered the same instruction and concluded that the 1999 addition clarified the ambiguity contained in the prior instruction by specifically advising the jury that "even if it finds the defendant committed the prior sexual offenses .... and infers that he was likely to have committed the charged offense, that inference alone is insufficient to prove beyond a reasonable doubt that he did commit the charged offenses." (People v. *519 Hill (2001) 86 Cal.App.4th 273, 278, 103 Cal.Rptr.2d 127.)
Juries are given a wide variety of instructions that instruct them how evidence is to be considered and are presumed to follow those instructions. (Richardson v. Marsh (1987) 481 U.S. 200, 206-207, 107 S.Ct. 1702, 95 L.Ed.2d 176.) "In order to prevail on a claim that jury instructions are misleading, the claimant must prove a reasonable likelihood that the jury misunderstood the instructions as a whole. [Citation.] `"`The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.'"' [Citation.]" (People v. Van Winkle, supra, 75 Cal. App.4th at p. 147, 89 Cal.Rptr.2d 28.)
We decline to follow Reliford because we believe it fails to accord to juries the proper presumption that they will be able to follow moderately complex, yet reasonably clear instructions. We find that in the present case, any confusion or misapprehension that may have been caused by the contested instructions was more than adequately corrected, explained or dispelled by the accompanying instructions. The jury received, inter alia, CALJIC Nos. 2.90, Presumption of InnocenceReasonable DoubtBurden of Proof; 2.20, Believability of Witnesses; 2.22, Weighing Conflicting Testimony; 17.01, Verdict May be Based on any One of a Number of Unlawful Acts.
Significantly, the jury also was instructed with a modified version of CALJIC No. 2.50.1 which added the instruction that the jury "may not convict the defendant of any of the charged crimes unless all the evidence presented convinces you beyond a reasonable doubt that the defendant is guilty of any of those charged crimes." This instruction is very similar to the instruction given in People v. Hill, supra, 86 Cal.App.4th at pages 278-279, 103 Cal. Rptr.2d 127 and we find it had the similar effect of helping to assure the jury "would understand and reconcile the distinction between the preponderance of the evidence standard applicable to the prior crimes, and the burden to prove each element of the current offense beyond a reasonable doubt." (Ibid.)
We also note that "`even dictum from our Supreme Court is considered "highly persuasive." [Citation.] We believe it is improbable that the California Supreme Court would suggest an instruction "adequately sets forth the controlling principles" for considering other crimes evidence, and then find that same instruction to be constitutionally defective.' [Citation.]" (People v. Brown (2000) 77 Cal. App.4th 1324, 1336, 92 Cal.Rptr.2d 433.)
We find there is no reasonable likelihood that the instructions contained in CALJIC Nos. 2.50.01 and 2.50.1 would lead the jury to conclude it could convict Haselman solely because it found by a preponderance of the evidence he had committed the uncharged sexual misconduct. This finding is further supported by the jury's verdict. Haselman was found guilty of the lesser offense with respect to one of the alleged victims. Had the jury been mislead by the instructions so as to consider Haselman guilty because he committed the uncharged misconduct, he would have been found guilty of sexual assault on both alleged victims. The trial court did not err when it instructed Haselman's jury pursuant to CALJIC Nos. 2.50.01 and 2.50.1.

DISPOSITION
The judgment is affirmed.
WE CONCUR: DIBIASO, Acting P.J. and VARTABEDIAN, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.
[1] All references to code sections hereafter are to the Evidence Code unless otherwise specified.
[2] Of relevance to the issues in this appeal, the following instructions were given:

"Also, if you find that the defendant committed any prior sexual acts or offences, you may but are not required to, infer that the defendant had a disposition to commit the same or similar type [of] sexual offenses. If you find the defendant had this disposition, you may, but are not required, to infer that he was likely to commit and did commit the crime or crimes for which he is accused in this particular trial.
"And I would also advise you that if you find by a preponderance of the evidence that the defendant committed prior sexual acts or offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. The weight and significance of this evidence, if any, will be for you to decide.
"You will be instructed again more fully on this at the conclusion of this particular trial. I think that covers it."
[**] See footnote *, ante.
[4] The 1999 revision to CALJIC No. 2.50.01 added the following paragraph:

"However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he][she] committed the charged crime[s]. The weight and significance of the evidence, if any, are for you to decide."